BAKER, JUDGE:
On the evening of November 7, 1986, the claimant, now a resident of Plant City, Florida, was seriously injured when the automobile in which he was a passenger left the road and rolled over an embankment. The automobile was driven by Drema Byrd, a friend of the claimant. The accident occurred in mercer County in the vicinity of Montcalm on State Secondary Route 11/6, more commonly known as Happy Hollow Road. The claimant alleges that his injuries were the result of the negligence on the part of the respondent in failing properly to maintain the shoulder of Route 11/6. Claimant contends that Drema Byrd drove her vehicle onto the shoulder to permit an approaching truck to pass her vehicle and the soft shoulder was inadequate for the purpose of supporting the weight of the Byrd vehicle. The shoulder is alleged to have been eroded by uncontrolled and improperly maintained drainage from the ditch line on the north side of the orad. The claimant asserts that but for this drainage problem the shoulder would not have collapsed. The claimant further alleges that respondent was negligent for failing to place warning *127 signs to alert motorists of a soft shoulder hazard. The claimant suffered severe personal injuries from this accident causing partial paralysis.
The respondent avers that the eroded shoulder alleged by the claimant does not exist and did not exist when this accident happened.
The claimant and driver of the vehicle had been together prior to the accident at claimant’s brother’s house in Falls Mills, Virginia, where the claimant had gone to sell a transmission. They had driven to Blue Well, West Virginia, to meet with a potential buyer for the transmission. The buyer did not show up so the claimant and Drema Byrd drove through Montcalm to Happy Hollow Road where claimant lived. Mrs. Byrd was taking the claimant to his place of residence. He testified that he and Drema Byrd were starting up Happy Hollow Road when there was an approaching vehicle, and that Dream Byrd drove the vehicle over to the right and stopped. He was looking behind their vehicle for vehicles coming upon them. He then felt the ground give way and the car started rolling over the right side. He remembered flying through the air and when he awoke he realized that he was lying in the creek with the vehicle on top of him. He was aware that someone was holding his head out of the water and he blacked out. When he awoke, he was in the hospital. He suffered a severed spinal cord as a result of the accident.
Claimant’s brother, Charles Pannell, went to the scene of the accident on November 9, 1986. He testified that he observed the area of the bank that looked like it had given way. He also observed the shrubbery and parts of chrome off of the vehicle and glass over the bank. One of his sons saw the claimant’s hat which Mr. Paiinell retrieved for his brother. He stated that “the bank looked like a piece of concrete, like sidewalk that you’d broke half of it off...[T]hat’s the way the bank right there at the edge of the road looked.”
Bobby Watkins, a resident of Happy Hollow Road having lived there for 30 years, testified there has been a drainage problem with water accumulating in the ditch line on the north side as there is a “swag” area in the road near the accident scene. There was dirt, gravel, and debris in the ditch line causing water to accumulate in the ditch line. The water would fill the ditch line and during a “real hard rain,” the water would flow across the road and over the shoulder bank causing erosion to the bank on the south side of the road. He further testified that there were slips along the south side of the road and that the respondent repaired the area during the summer of 1988 by removing a portion of the bank on the north side with an enloader and placing the dirt on the south side to widen the road by approximately three to four feet. The accident in the instant claim occurred prior to this repair in November 1986. He further testified that residents in the area would place stakes at the edge of the road to mark slip areas, but there were no stakes at the accident scene.
James S. O’Donnell, a resident of Happy Hallow Road, described the road with the hillside on the north and the bank on the south side being just straight down the mountain. There were no warning signs along the road nor were there any lights for motorists. It was very dark *128 at night. He also testified as to the problems with the ditch line and the water flowing across the road and over the bank causing slips to occur. He stated that respondent would clean the ditch line about two or three times a year. He explained that the water could be seen by motorists and that ice would from during the winter months in the are but there was no ice on the date of the accident. Another resident of this road, Richard Spaulding, corroborated the testimony of both Mr. Watkins and Mr. O’Donnell.
Douglas N. Gills, a Happy Hollow resident for 55 year who lived across the road from the accident scene, testified that he had not noticed any movement or change in the shoulder or the road bank where the accident occurred. The Gills family owned the property on both sides of the road at the scene of the accident, and Mr. Gills was on the property regularly running his trap lines. In fact, he was preparing trap lines on the night of the accident. He stated that he was in his yard when the accident occurred and he heard a woman yelling. He went to the edge of the road and observed the vehicle lights below the road on the river bank. He heard the claimant groaning and approached the claimant to provide assistance until ambulance personnel arrived. His involvement with this accident establishes his knowledge of the scene of the accident. It was his opinion that the vehicle had brushed a tree as indicated by tire marks where it went over the hillside and marks on the tree. This location is not the narrow spot in the road where the claimant opines that the vehicle went off the road. Photographic evidence does not reveal an eroded shoulder in the area where the vehicle went off the road as established by witness Gills.
Deputies with the Mercer County Sheriffs Department, Randall Hill and Randall Earnest, who investigated the claimant’s accident concluded that there was no evidence that the shoulder bank collapsed. Deputy Hill testified that Drema Byrd gave him a statement after the accident and she wrote that she “was driving up Happy Hollow and a truck was coming down. I tried to get over and the car went over the bank and flipped.” It was his opinion that Drema Byrd drove her vehicle off the edge of the road and the vehicle then rolled down the hill.
An accident reconstructionist, Dr. William Berg, visited he scene of the accident on November 3, 1988, or two years after the accident. He testified that Happy Hollow Road constituted an unpaved, local, rural road. The area of the accident was very narrow allowing only one vehicle to pass through the area at a very steep drop-off down an embankment into a creek bottom. The embankment was so steep that a vehicle would roll over rather than traverse the slop down to the creek. It was his opinion that a warning sign and post-mounted delineators or object markers would have warned motorists of the unusually narrow section of the road an delineators would identity the edge of the road beyond which motorists should not drive. He also testified that the formation of a windrow at the edge of the road forming a curb-like structure would provide a warning to drivers as to the closeness of their vehicle indicated to him that this vehicle had rolled over. He was of the opinion that this would occur either through a combination of slope failure due to the weight of the vehicle on an unstable slope, or the fact that the driver simply got so close to the slope that the vehicle was at an angle such that it became unstable and rolled over.
*129 The evidence established that respondent maintained this road int he usual manner for an unpaved road. Melvin Blankenship, a crew leader supervisor for respondent in Mercer County, testified that respondent maintained Happy Hollow Road in the usual and customary manner by using a grader and dump truck to pull the ditch line and grade the road. The dirt would be placed on the south side where “it went on over the hill.” He stated that there was no shoulder on the south side of the road because dirt roads do not have shoulders. He also described the accident scene as a very narrow area. He testified that the ditch line would fill with water, but it would flow across the road and over the hill side only after heavy rains. He further stated that the road had not been widened at any time after this accident and that the curve (the narrow spot in the road) had been that way for years.
The issue of warning sings for soft shoulders was addressed by William R. Bennett, a maintenance engineer for respondent. He explained that soft shoulder signs are paved in accordance with respondent’s “Manuel on Uniform Traffic Control Devices”. The signs are ordered by the traffic engineering department. The traffic engineering department investigates an area to determine if it meets the criteria set forth in the Manual. Provisions in the Manual also instruct employees as to grading and ditching operations specifically providing that no surplus material be placed to form a windrow at the edge of the road as this will be a hazard to traffic and will also form a dam that would tend to cause the ponding of water on the roadway surface. He testified that it is respondent’s policy to blade roads in such a manner as to avoid the formation of windrows or curbs of excess material as it is a traffic hazard.
The issue before the Court is whether there was a defective condition existing on Happy Hollow Road on the night of November 7, 1986; whether respondent had prior notice and a reasonable amount of time to correct the defective condition; and whether respondent failed in its duty to warn motorists of the defective condition, i.e., the narrowed area on the south side or mountain side of Happy Hollow Road. The evidence indicates that the respondent did not have prior notice of any erosion to the shoulder of Happy Hollow Road at the scene of this accident. The claimant has not established by a preponderance of the evidence that the road gave way under the wight of the Drema Byrd vehicle, or that she had come to a stop. In her statement given to the investigating officer, Mrs. Byrd would have made mention of her coming to a complete stop if, in fact, she had. The burden of proof of the evidence that the respondent had actual or constructive notice of the road defect. The State is neither an insurer nor a guarantor of the safety of persons traveling on its highways. Adkins v. Sims, 130 W.Va. 645,46 S.E. 2d 81 (1947). For the respondent to be held liable for damage caused by a road defect, it must have had actual or constructive notice of the condition and a reasonable amount of time to take corrective action. Davis v. Dept. of Highways, 11 Ct.Cl. 150 (1977).
The Court is of the opinion that the accident herein occurred when Drema Byrd drove her vehicle too far over the bank in an attempt to avoid the oncoming truck. Her action caused the vehicle to very too far off the shoulder of the road and it then went over the mountain side on its own momentum. The claimant himself was familiar with the road and the nature of the steep drop-off on the south side of the road. He must have realized that the road was narrow and *130 dark. The road may have posed a hazard to an unfamiliar driver and, as a reasonably prudent person, he should have cautioned her accordingly. The testimony in this claim is conflicting as to exactly where the vehicle actually went over the bank. It would require speculation on the part of the Court to hold that the vehicle went off the narrow part of the road in the vicinity of this accident. This Court will not resort to such speculation.
The Court is of the further opinion that respondent maintained this road in the usual and customary manner by cleaning the ditch lines on a regular basis. There are many narrow, curvy dirt roads throughout West Virginia which respondent maintains. For this Court to require more than the ordinary standard of care would place an undue burden upon respondent and its economic resources.
The Court wishes to acknowledge that the claimant was well represented by his attorney. The evidence was presented in a thorough manner and the briefs on behalf of the claimant were comprehensive. The Court is aware of the serious nature of the injuries claimant received in this unfortunate accident; however, the Court is constrained by the findings of fact and conclusions of law as indicated hereinabove and must deny this claim.
Claim disallowed.